**Jerome HARLING, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11719.**

District of Columbia Court of Appeals.

Argued May 10, 1978.

Decided June 21, 1978.

David C. Niblack, Washington, D.C., appointed by this court, for appellant.

Charles Hall, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., and John A. Terry, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before KELLY and GALLAGHER, Associate Judges, and PAIR, Associate Judge, Retired.

GALLAGHER, Associate Judge:

■ Appellant was tried by a jury and convicted of first-degree murder while armed (D.C.Code 1973, §§ 22–2401, –3202) and carrying a pistol without a license (D.C. Code 1973, § 22–3204). On appeal, he makes three claims of error: (1) His Sixth Amendment right to counsel was violated when the trial court removed his appointed attorney without just cause and over his objection; (2) the trial court erred in summarily denying his motion for discovery of the names of certain government witnesses; and (3) the trial court erroneously refused to give his requested self-defense instruction. We agree with appellant that the court unnecessarily interfered with his right to counsel and reverse.[1]

The facts of the underlying offense are not controlling as to the issues raised and may be summarized briefly. The government's principal witness at trial, Audrey Valentine, testified that on December 9, 1975, she, her husband and another woman accompanied appellant to a poolroom near 7th and Wiltberger Streets, N.W., in order to purchase narcotics. It was outside this poolroom that appellant is alleged to have fired at least two shots into the body of Dempsey Hinton, fatally wounding him.

On June 4, 1976, an original indictment was filed charging appellant with the murder of Hinton. On June 21, appellant was arraigned and an attorney was appointed to represent him. Trial was scheduled for October 4. In the interim, motions for discovery (seeking primarily the names of government witnesses) and for suppression of identification were filed. At a status hearing on September 13, the prosecutor noted the pending discovery motion and requested that the trial be rescheduled for

sometime in November in order for the government to assess what information, if any, it would release to the defendant. Defense counsel acknowledged that postponement of the trial might consequently be helpful to the defense, but concomitantly asserted appellant's speedy trial rights on the belief that the government should have previously produced the requested information. The trial judge then remarked:

THE COURT: What, these names?

MR. BOWERS: Yes. And I think—

THE COURT: I'll give you three minutes to tell me why I should give it to you.

After an exchange with defense counsel, the court indicated it would deny the entire discovery motion without hearing argument from the government. In response, defense counsel stated:

MR. BOWERS: I would have to state to Your Honor, now, this man will receive ineffective assistance of counsel if I walk into the courtroom—

THE COURT: Are you retained or appointed?

MR. BOWERS: I was Court appointed.

THE COURT: Then I'll strike you and appoint somebody else.

Strike Mr. Borders, Mr. Bowers and have another attorney appointed. Set the case for November.

MR. BOWERS: May I complete the statement for Your Honor? 

THE COURT: You're suggesting if you don't get these names now, the claim will be ineffective assistance of counsel.

MR. BOWERS: *No, I'm not saying that. If Your Honor will hear me out.*

THE COURT: You're not going to get the names, sir. You're suggesting you can't properly defend him at the time of trial.

---

1. While it is not necessary to reach the remaining claims of error, we will state that we disapprove of the court's summary treatment of appellant's discovery motion. The motion was not necessarily without merit. *See United States v. Holmes*, D.C.App., 343 A.2d 272, *rehearing denied*, 346 A.2d 517 (1975). The trial court had an obligation at least to hear counsel's argument as to why access to the names was thought necessary. Furthermore, the record discloses that the government may

have been willing to give defense counsel some of the names. In any event, by virtue of his first trial, appellant has now discovered most of the names he was seeking.

As to the self-defense claim, we simply note that an accused is entitled to a self-defense instruction if the evidence, either that of the defense or prosecution, fairly raises the issue. *Byrd v. United States*, D.C.App., 364 A.2d 1215 (1976); *Womack v. United States*, 119 U.S. App.D.C. 40, 336 F.2d 959 (1964).

MR. BOWERS: If I don't get them—

THE COURT: You're not getting them, sir.

MR. BOWERS: I'm saying if I can't find out some kind of way—

THE COURT: I'm satisfied you're not going to represent him. Strike Mr. Bowers, send it back to CJA, schedule the case for October 4 status hearing with new counsel and set the trial at that time. Thank you very much. I don't accept your representations you cannot do that and you'll not fill this record ahead of time, months ahead as to inadequate representation of counsel.

MR. BOWERS: I'm just suggesting to the Court—

THE COURT: Well, I've accepted your suggestion and ruled on it and find out and satisfied you're going to give him the right kind of a case then. Because you're trying before the Court of Appeals, you're not trying before the trial judge.

MR. BOWERS: *No, I'm, I'm asking the trial judge to consider the interests of justice in ruling on these motions.*

THE COURT: *Well, I'm satisfied he needs another lawyer.* Thank you very much.

MR. BOWERS: Because I raised those issues?

THE COURT: No, you suggest if you don't get it, you cannot raise it properly. Mr. Bowers, that terminates the colloquy, believe me. Thank you very much. [Emphasis added.]

On September 24, the court received a communication from appellant requesting that Mr. Bowers be reinstated as his defense counsel. Appellant said that

[t]o appoint another Attorney at this stage of the case would definitely and seriously damage and/or hamper the Defense thereby denying the Defendant the fairest trial possible.

Attorney Shellie F. Bowers has done extensive and in depth research and investigating into this case that would be seriously interrupted if another Attorney was about [*sic*] to the case at this time.

Moreover, there appears to be no "just" justification for the order withdrawing Attorney Bowers from the case, and as the records will indicate the only justification for the Court's actions is Counsel's determination to effectively represent the Defendant. Furthermore the Court was tragically and shamefully disrespectful to Counsel and his efforts to represent the Defendant.

On the face of this document the following notation appears: "Denied—The Court is paying for counsel, not the deft." We think the record speaks for itself. Appellant was denied his Sixth Amendment right to counsel by the court's unwarranted interference with the relationship established between appellant and his attorney.

 When an accused has the means to employ counsel, the Sixth Amendment right to counsel embraces not only the assistance of counsel but also the reasonable opportunity to secure counsel of one's own choice. *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Once counsel has been retained, the court may not unreasonably interfere with the accused's choice of counsel. *Lee v. United States,* 98 U.S.App. D.C. 272, 235 F.2d 219 (1956), *aff'd after remand,* 102 U.S.App.D.C. 204, 251 F.2d 915 (1958). The only limitation that may be placed on the right to retained counsel of choice is that the client's selection not impede or disrupt the orderly administration of justice. *See, e.g., McKoy v. United States,* D.C.App., 263 A.2d 645 (1970) (refusal to substitute counsel near close of trial not an abuse of discretion); *United States v. Dinitz,* 538 F.2d 1214, *rehearing denied,* 542 F.2d 1174 (5th Cir. 1976) (en banc), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977) (disruptive conduct of attorney warranted his removal from the case). We are called upon to decide in this case whether a trial judge may discharge court-appointed counsel, over the objections of the attorney and the defendant and under circumstances where the removal of retained counsel would not be justified.

 It has been generally recognized that while an indigent's preference for a

particular attorney may be considered by the court, he does not have an unqualified right to appointed counsel of his own choosing. *United States v. Hampton,* 457 F.2d 299 (7th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972); *Tibbett v. Hand,* 294 F.2d 68 (10th Cir. 1961). Furthermore, once counsel has been selected for an indigent defendant, substitution of that counsel upon request of either the defendant or the attorney rests in the sound discretion of the court. *Thornton v. United States,* D.C.App., 357 A.2d 429, *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976). We conclude, however, that once an attorney is serving under a valid appointment by the court and an attorney-client relationship has been established, the court may not arbitrarily remove the attorney, over the objections of both the defendant and his counsel. "[O]nce counsel has been chosen, whether by the court or the accused, the accused is entitled to the assistance of *that* counsel at trial." *English v. State,* 8 Md.App. 330, 259 A.2d 822, 826 (1969) (emphasis in original). *Accord, McKinnon v. State,* 526 P.2d 18 (Alaska 1974); *Smith v. Superior Court of Los Angeles County,* 68 Cal.2d 547, 68 Cal.Rptr. 1, 440 P.2d 65 (1968) (en banc). The right to assistance of chosen counsel is not absolute, however. A trial judge may "in the interest of justice" substitute one counsel for another. D.C.Code 1977 Supp., § 11–2603. Gross incompetence or physical incapacity of counsel, or contumacious conduct that cannot be cured by a citation for contempt may justify the court's removal of an attorney, even over the defendant's objection. *See, e.g., United States v. Dinitz, supra.*

■ The record fails to disclose any justifiable basis for the court's removal of this appointed attorney as appellant's trial counsel. After the defense motion for discovery was summarily denied, counsel stated, essentially, that he could not be an effective advocate without access to the names of eyewitnesses. The court charged

counsel with trying to make a record of ineffectiveness of counsel for appeal. Counsel was abruptly cut off by the court in his efforts to assure the court that this was not his intent, but, rather, he desired only that the motion be granted "in the interests of justice." The motion for discovery was not frivolous. Like *United States v. Holmes,* D.C.App., 343 A.2d 272, *rehearing denied,* 346 A.2d 517 (1975), this was a first-degree murder case in which counsel asserted he had no means of acquiring the names of witnesses who were passersby. As a matter of fact, until recently discovery of witness lists was mandatory in a first-degree murder prosecution, which was considered a capital offense. 18 U.S.C. § 3432 (1969).[2] In addition, there had been a six-month hiatus between the date of the offense and the date appellant was charged, which might have served to hinder counsel's investigation. Counsel's efforts were within the bounds of reasonable advocacy. His conduct appears neither contemptuous, insolent, nor unprofessional. The court's response to counsel's persistence was both intemperate and unwise. Mere disagreement as to the conduct of the defense certainly is not sufficient to permit the removal of any attorney.

■ The trial judge's obduracy continued when he refused to reinstate counsel on appellant's request eleven days after his removal. Appellant was demanding not a change of counsel, but only that his original court-appointed counsel be retained. His request could have been granted without disruption or delay of the trial. The fact that "the Court was paying for counsel, not the defendant," is not a satisfactory reason for refusal to reinstate counsel in whom appellant had reposed his trust. The Supreme Court of California put it well in rejecting a similar justification for the removal of an indigent's counsel:

A superficial response is that the defendant does not pay his fee, and hence has no

---

2. The Supreme Court's decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), in effect rendered unconstitutional the provision of the District of Columbia stat-

ute (D.C.Code 1973 Supp., § 22–2404) which permitted capital punishment for first-degree murder at the discretion of the jury.

ground to complain as long as the attorney currently handling his case is competent. But the attorney-client relationship is not that elementary; it involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty. Furthermore, the relationship is independent of the source of compensation, for an attorney's responsibility is to the person he has undertaken to represent rather than to the individual or agency which pays for the service. . .
It follows that once counsel is appointed to represent an indigent defendant, . . the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained. To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused. [*Smith v. Superior Court of Los Angeles County*, 440 P.2d at 74 (citation omitted).]

The court's discharge of appellant's attorney was not only an encroachment on appellant's right to counsel, but·also a threat to the independence of the bar which represents indigent defendants under the District of Columbia Criminal Justice Act (D.C. Code 1977, §§ 11–2601 *et seq.*). If an attorney must be guarded in his advocacy for fear he may be dismissed by the judge before whom he is trying the case, the quality of representation surely would suffer. Even aside from constitutional considerations, on this basis alone we would not hesitate to exercise our supervisory power over the trial court to insure that a professional performance in defense advocacy by the bar is not chilled in this jurisdiction. While we appreciate the necessity for a judge to have the power to protect himself from actual obstruction in the courtroom, or even from conduct so near to the court as actually to obstruct justice, it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases. An independent judiciary and a vigorous, independent bar are both indispensible parts of our system of justice. [*In re McConnell*, 370 U.S. 230, 236, 82 S.Ct. 1288, 1292, 8 L.Ed.2d 434 (1962).]

 The government contends that even assuming the court erred in removing appellant's court-appointed attorney, reversal is not required since appellant eventually received a competent defense through substituted counsel. We think it irrelevant that substitute counsel has not been shown to have performed ineptly. The claimed deprivation is an arbitrary infringement on the right to assistance of counsel and interference with the attorney-client relationship, not a claim of ineffective assistance of counsel. Reversal is required even though no prejudice is shown. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). *See also Holloway v. Arkansas,* —— U.S. ——, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978); *English v. State, supra; Smith v. Superior Court of Los Angeles County, supra.* The Sixth Amendment guarantee of assistance of counsel requires that it not be impaired by the court, as it was here.

*Reversed and remanded for a new trial with instructions that, barring intervening circumstances not apparent on this record, Shellie F. Bowers is to be reappointed as counsel for the defendant.*